IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| CROSSVILLE MEDICAL ONCOLOGY, P.C., | ) ) ) | |
| Plaintiff/Counter-Defendant, | ) ) | Case No. 2:04-0091 |
| v. | ) ) ) | Chief Judge Haynes |
| GLENWOOD SYSTEMS, LLC, d/b/a GLENWOOD SYSTEMS, INC., | ) ) ) | |
| Defendant/Counter-Plaintiff, | ) | |

Consolidated with:

| | | |
|---|---|---|
| GLENWOOD SYSTEMS, LLC, and GLENWOOD SYSTEMS, INC., | ) ) ) | |
| Plaintiffs, | ) ) | Case No. 2:10-0061 |
| v. | ) ) ) | Chief Judge Haynes |
| DAVID C. TABOR, M.D., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM

Plaintiff/Counter-Defendant, Crossville Medical Oncology, P.C., ("CMO") filed the first of these actions in the Chancery Court of Cumberland County, Tennessee against the Defendant/Counter-Plaintiff Glenwood Systems, LLC, doing business as Glenwood Systems, Inc. (collectively, "Glenwood"). CMO asserted claims arising out of a billing agreement with Glenwood. Glenwood removed the action to this Court based upon the diversity statute, 28 U.S.C. § 1332, without objection. In the 2004 action, Plaintiff CMO contended that its billing

1

services agreement with the arbitration clause was with "Glenwood Systems, Inc.," that Plaintiff CMO understood to be a trade name or doing business as Glenwood Services, LLC. The Court closed this action to allow the parties to proceed with arbitration pursuant to the parties' billing services agreement ("the Agreement"). (Docket Entry No. 43). On January 6, 2010, the Arbitrator issued an award in favor of Glenwood against Dr. David D. Tabor, M.D., individually, in the amount of $221,147.45. (Docket Entry No. 92-5, Exhibit 5 at 6).

After the arbitration proceeding, Glenwood filed an action against David D. Tabor, M.D., Case No. 2:10-00061, seeking to enforce the arbitration award against Dr. Tabor individually. That action was consolidated with the 2004 action. Plaintiff CMO moved to reopen the 2004 action and to amend its complaint to assert claims for business torts, violation of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101 et seq., and breach of an oral contract against Glenwood Systems, LLC. In the 2004 action, Plaintiff CMO contended that its billing services agreement with the arbitration clause was with "Glenwood Systems, Inc.," that Plaintiff CMO understood to be a trade name or doing business as Glenwood Services, LLC. The Court denied that motion and on appeal, the Sixth Circuit affirmed. (Docket Entry No. 74 at 5).

In subsequent proceedings, the Court affirmed the arbitration award, but on appeal, the Sixth Circuit reversed with a limited remand "to determine whether Dr. Tabor is bound by the arbitration agreement." (Docket Entry No. 107 at 9). The Court set a bench trial on the issue in the Sixth Circuit's remand. Set forth below are the Court's findings of fact and conclusions of law.

## A. Findings of Fact

David C. Tabor, a physician who specializes in oncology, is the sole-shareholder of Crossville Medical Oncology, P.C., in Crossville, Tennessee. Dr. Tabor was graduated from medical school in 1976 and is licensed to practice medicine in Tennessee and Virginia. (Docket Entry No.153, Transcript at 60, 61). Dr. Tabor is CMO's Chief Executive Officer, President and Secretary. Id. at 57, 104, 106, 107, Glenwood's Exhibit 15. Prior to CMO, Dr. Tabor served as treasurer for his former medical practice. Id. at 64 and Glenwood Exhibit 15.

In his medical practice, Dr. Tabor executes contracts for medical services, as an individual and as the representative of CMO. Id. at 61. Although Dr. Tabor refers to his representative capacity in CMO's annual reports, CMO has never conducted a corporate meeting nor recorded any official vote. Id. at 79. CMO does not maintain a minute book nor other corporate records. Id. Dr. Tabor decides all business issues for CMO, id. at 65, including to enter the Agreement with Glenwood and to terminate that Agreement. Id. at 77, 79-80. Dr. Tabor also authorized CMO's action against Glenwood. Id. at 83.

Glenwood Systems, LLC is a Connecticut company that provides billing services only to physicians and is duly authorized to conduct business in Tennessee. Id. at 38 and Exhibits 6, 8. Dr. Tabor's Agreement with Glenwood arose after his dissatisfaction with his hospital's billing services. Id. at 69-70. Dr. Tabor read a medical journal advertisement and contacted Glenwood to discuss its services. After a meeting, Glenwood sent Dr. Tabor a copy of its standard billing services agreement that Dr. Tabor reviewed. Id. at 70, 71-72. After consulting with his counsel, Dr. Tabor signed Agreement on January 12, 2004 with the signature "Dr. David C. Tabor, M.D." (Plaintiff's Exhibit 1). Beneath Dr. Tabor's signature is the word "For" and a signature line for

3

the signatory to designate whether the document is signed on behalf of an entity and the identity of that entity. Dr. Tabor left that space blank. In addition, the Agreement has two attachments that are schedules for hardware and software. Each schedule provides, in pertinent part: "SUBMITTED TO: Crossville Medical Oncology", but these schedules lack any reference to "Crossville Medical Oncology" as a "P. C.", professional corporation or other legal status. Dr. Tabor also signed these schedules without any reference to his representative capacity. Dr. Tabor testified that he "assumed" that he signed this Agreement for Crossville Medical Oncology, P.C. (Docket Entry No. 153, Transcript at 74), but admits that he did not tell any Glenwood representative about the capacity in which he signed the Agreement. Id. at 57.

The language of this Agreement reflecting who were the parties to this Agreement provides, in pertinent part:

BILLING SERVICE AGREEMENT

Client Name

1. *Terms of Agreement*: The Initial Term of this Agreement is twelve (12) months from the live date. This Agreement will be deemed renewed for successive additional twelve (12) month term unless Clint gives Glenwood at least ninety (90) days prior written notice or Glenwood gives Client at least ninety (90) days prior written notice of its intention to terminate this Agreement effective at the end of either the Initial Term or any successive twelve (12) month term. Until such termination notice is served fixing the termination date, this Agreement shall continue in full force and effect.

2. *Termination*: Client may terminate this Agreement prior to the expiration date of the contract term by providing at least ninety (90) days prior written notice to Glenwood. In such event, Client must pay Glenwood a cancellation charge equal five hundred dollars time the number of whole or partial months between the cancellation date and the expiration date of the current term. Upon termination of Glenwood's services by either party, Glenwood shall return all billing records pertaining to the Client within thirty (30) days of the notice provided Client has paid all outstanding

Glenwood invoices. The billing database shall be returned in standard ASCII comma delimited format.

3. *Client's responsibilities*:
   A. Provide all information requested on the Start-up Requirements page and sign off as to the accuracy of such information.
   B. Provide all claim information in a legible form and code accurately.
   C. Provide copies of medical records whenever required by insurance carriers.
   D. Provide copies of payments and EOB's on day of receipt by third party payers and patients including all self pays and co-pays. If Client fails to comply with this responsibility, Glenwood may charge Client a time and materials charge for work performed on claims for which the Client has received payment.
   E. Provide clarifications as required by Glenwood personnel. Resolve any items listed in "Open Problems" promptly.
   F. Verify patient insurance information and coverage.
   G. Provide authorizations as required by payer to enable Glenwood submit claims on behalf of the Client.
   H. Client shall obtain authorizations from the patient to submit their medical records to payer for the purpose of insurance adjudication.
   I. Have patients call Glenwood's phone number at all times for status.
   J. Create and maintain a computer network within the office.

4. *Glenwood's responsibilities:*
   A. Perform billing activities on behalf of the Client. Perform specific tasks outlined in the Client Service Proposal within reasonable time limits.
   B. Report any rejected claims, patient denials, and insurance inquiries to the Client.
   C. Perform audit checks to ensure accuracy of claims submitted and account statements.
   D. Correct any accounting errors and omissions immediately upon notice and communicate the same to the Client.
   E. Glenwood shall not change the claim information (ACPT Code/Charges/Units/Diagnosis) without written consent of the Client/provider.
   F. Glenwood shall ensure confidentiality of patient records and shall not reveal any billing and patient information to any party other than the provider, patient and the payer.
   G. Glenwood Systems shall be responsible for paying any claims that

5

is denied as a result of Glenwood Systems' error.

Plaintiff's Exhibit 1. This Agreement is governed by Connecticut law. Id. at ¶ 10.

During the implementation of this agreement, Dr. Tabor used either his name and the name "Crossville Medical Oncology", (Docket Entry No. 153, Transcript at 10 and Plaintiff's Exhibit 2, Defendant's Exhibits 2 through 5). In its billing services, Glenwood listed Dr. Tabor's individual provider number, but Dr. Tabor explained that the governing federal agency requires his provider number. Id. at 31.

### B. Conclusions of Law

This is a diversity action and state law governs the parties' claims and defenses. Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938) Here, the parties' contract expressly provides for Connecticut as the governing law[1]. The Connecticut Supreme Court stated the relevant principles for this dispute in Otto Contracting Company, Inc. v. Schinella & Son, Inc., 179 Conn. 704, 427 A.2d 856 (1980) (1980)

> Whether a contractual commitment has been undertaken is ultimately a question of the intention of the parties. "Intention is an inference of fact, and the conclusion is not reviewable unless it was one that the trier could not reasonably make."
>
> "A contractor whose expressions induce another to understand and to act in reliance on that understanding may be held responsible therefor." 3 Corbin, Contracts s 538, p. 57 (1960). See Frigaliment Importing Co. v. B. N. S. International Sales Corporation, 190 F.Supp. 116, 121 (S.D.N.Y.1960); Hotchkiss v. National City Bank of New York, 200 F. 287, 293 (S.D.N.Y.1911), aff'd, 201 F. 664 (2d Cir.), aff'd, 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 and 231 U.S. 60, 34 S.Ct. 22, 58 L.Ed. 121 (1913); Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla.1957); Keefer Coal Co. of Illinois v. United Electric Coal Cos., 291 Ill.App. 477, 492-93, 10 N.E.2d 210 (1937); Restatement (Second), Contracts s 21A(2) and comment d (Tent. Draft 1973).

---

[1] A noted infra, Tennessee law is in accord with Connecticut law on the relevant legal standards

427 A.2d at 858.

Where the contractual controversy involves whether a corporate entity or individual signatory is the party bound by an agreement, the often cited standard under Connecticut law[2] provides that:

> [W]here the corporation appears as the primary signer, the almost universally accepted and reasonable rule of construction is that, where the signature is that of the corporation, and the name or names of one or more of its officers in their official capacity are appended as subscribing agents, whether with or without the use of "by" or "per," or similar word expressive of their agency, and, although the pronoun "we" or "I," as the case may be, is used in the body of the writing, **the corporation will be regarded as the signer and obligor, and the individuals will not be obligated, unless other language or the general tenor of the writing indicates a contrary intent.**

Jacobs v. Williams, 85 Conn. 215, 82 A. 202, 203 (1912) (emphasis added).

As to the agent or officer who signs a contract for a corporate entity, Connecticut law[3] is that:

---

[2] On the issue of the signatory bound by the agreement, Tennessee law also examines the language of the contract. Bill Walker & Associates Inc. v. Parrish, 770 S.W.2d 764, 770 (Tenn. Ct. App. 1989) (citing Lazarov v. Klyce, 195 Tenn. 27, 34, 255 S.W.2d 11, 14 (1953).

[3] Again, Tennessee law is in accord. "An individual's signature 'without limiting words before or after it, is the universal method of signing a contract to assume a personal obligation'". Associated Shopping Center Properties Ltd. v. Hodge, No. M2010-00039-COA-R3-CV2011 WL 1025753 at * 6 (Tenn. Ct. App. March 22, 2011) (quoting Lazarov, 255 S.W.2d at 14. See also Parrish, 770 S.W.2d at 770 ("A corporate officer's signature, preceded by the corporation's name and followed by words denoting the officer's representative capacity, binds only the corporation. However, Mr. Parrish cannot take refuge behind this principle because his signature is preceded by his own name in addition to his corporation's assumed name. The use of 'MARK PARRISH/PARCO ENTERPRISES, INC.' prior to his signature can be viewed as an indication that Mr. Parrish intended to sign the contract as an individual and as a representative of his corporation. Thus, the inclusion of his corporate title following his signature does not necessarily indicate that he signed the contract only in his representative capacity").

> "It is true ... that in order to form a contract, generally there must be a bargain in which there is a manifestation of mutual assent to the exchange between two or more parties; see Restatement (Second), Contracts §§ 1(c), 15, 19 (Tent.Dr.1964); 1 Williston, Contracts (1957) §§ 18, 22; see also Hoffman v. Fidelity & Casualty Co., 125 Conn. 440, 444, 6 A.2d 357 (1939); Clark v. Diefendorf, 109 Conn. 507, 510, 147 A. 33 (1929); **and the identities of the contracting parties must be reasonably certain.**" Ubysz v. DiPietro, 185 Conn. 47, 51, 440 A.2d 830 (1981).
>
> **"To avoid personal liability, it is the duty of an agent to disclose both the fact that he is acting in a representative capacity and the identity of his principal, since the party with whom he deals is not required to discover or to make inquiries to discover these facts .... Therefore, 'where the agent contracts as ostensible principal, regardless of his intention and notwithstanding his lack of personal interest in the consideration, he will be personally liable on the contract as if he were the principal.' 3 C.J.S., Agency § 369."** New England Whalers Hockey Club v. Nair, supra, 683, 474 A.2d 810.

Reynolds Associates, Inc. v. Asbeck, 23 Conn. App. 247, 580 A.2d 533, 536 (1990) (emphasis added).

Here, Dr. Tabor signed the Agreement with Glenwood without referring to his representative status. The Agreement expressly provided Dr. Tabor the opportunity to designate if he were signing this Agreement as a representative of an entity. Beneath Dr. Tabor's signature, the Agreement contains a separate line with the word "For" that Dr. Tabor left blank. Dr. Tabor signed the schedules attached to the Agreement again without any reference to a representative capacity. To be sure, the schedules attached to the Agreement refer to "Crossville Medical Oncology", but without its legal status. In a word, the schedules to the Agreement, do not reflect that "Crossville Medical Oncology" is a "P.C." , professional corporation. Under these facts, the Court concludes that Connecticut and Tennessee laws render Dr. Tabor the party who is personally liable under the Agreement to Glenwood for its billing services.

Moreover, Dr. Tabor is CMO's sole shareholder and physician who makes all business

decisions for CMO, including the execution and termination of this agreement with Glenwood. CMO exhibits none of the characteristics of a corporation. Dr. Tabor was the beneficiary under this Agreement. In similar circumstances, the Sixth Circuit has held an entity that did not sign the agreement to arbitrate was bound by the arbitration agreement. Federated Department Stores, Inc. v. J.V.B. Industries, Inc., 894 F.2d 862 (6th Cir. 1990) ("Federated's final argument is that JVB had no right to compel arbitration of the business destruction claims because JVB was not a party to the construction contracts. Only TAB and Federated executed the contracts. We hold, however, that JVB was a proper party to the arbitration. . . . JVB and TAB were alter egos. Brusca controlled both corporations, and TAB was a mere instrumentality of JVB.")

For these collective reasons, the Court concludes that Dr. Tabor is bound by the arbitration agreement and the arbitrator's award.

An appropriate Order is filed herewith.

ENTERED this the 3rd day of January, 2014.

William J. Haynes, Jr.
Chief Judge
United States District Court